UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DANIEL PERRY,

        Plaintiff,

v.

UNKNOWN ABRAMSON et al.,

        Defendants.

Case No. 2:18-cv-148

Honorable Paul L. Maloney

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. §§ 1983, 1985, 1986, 1997d, and the Michigan constitution. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants LaLonde, Isard, Horton, and Batho.

## Discussion

    I.    <u>Factual Allegations</u>

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan. Plaintiff sues the

following MDOC employees at URF: Warden Connie Horton; Deputy Wardens Unknown Isard and Unknown LaLonde; Lieutenant Crystal Bigger; Residential Unit Manager (RUM) Unknown Batho; and Correctional Officer Unknown Abramson.

Plaintiff alleges that he transferred to URF from another facility in February 2018. Before the transfer, officers had packed up his property, itemized it, and sealed it. On February 25, 2018, Officer Abramson broke the seal on Plaintiff's property outside of Plaintiff's presence. Abramson then called Plaintiff over the phone to inform him of this. Plaintiff responded that Abramson's actions violated prison policy, and Plaintiff indicated that he would file a grievance about it. Abramson then told Plaintiff that if he filed any grievances or complaints about the matter, Abramson would go back through Plaintiff's property, alter Plaintiff's appliances, and write as many misconducts as he could to ensure that Plaintiff would be placed on "TOP-LOCK" restriction. (Compl., ECF No. 1, PageID.8.)

On February 26, Plaintiff filed a grievance against Abramson for going through his property and for threatening to retaliate against Plaintiff. On March 1, Abramson issued three "false" Class II and Class III misconduct tickets against Plaintiff. (*Id.*) Abramson apparently damaged or altered Plaintiff's property to make it appear that it was stolen, damaged, or improperly-altered, and then issued misconduct tickets for possessing or damaging that property.

Lieutenant Bigger presided over a misconduct hearing on March 6. Bigger allegedly refused to allow Plaintiff to speak, contrary to prison policy, and told him that she did not care about his evidence or statements because she always trusted the word of a prison official over that of a prisoner, especially prisoners like Plaintiff who "like to file grievances and complaints against her co-workers." (*Id.*, PageID.9.) She also allegedly told Plaintiff that he was guilty because he filed grievances against her co-workers. She told Plaintiff "to stop filing

2

grievances and complaints and maybe next time, this will not happen[.]" (*Id.*) She warned him not to file any grievances or complaints against her or she would "make his life at URF a living hell . . . it wouldn't take much to give an order to have [his] house shook down, his property damaged, dest[royed], misplaced, lost or even a weapon planted in his area of control[.]" (*Id.*)

Plaintiff appealed his misconduct convictions to the deputy warden's office and sent several kites to the warden complaining about Bigger's conduct. They did not respond. According to Plaintiff, "Defendants Isard, LaLonde, Horton and Batho, never adjudicated or responded to plaintiff's disciplinary appeal or to any of his kites[.]" (*Id.*)

Defendants Batho, Abramson, and Bigger allegedly withheld Plaintiff's property for several months despite an order from the warden to return Plaintiff's property. Before they finally returned Plaintiff's property to him in August 2018, they allegedly damaged his appliances so that they no longer work.

Plaintiff claims that Defendants conspired to retaliate against him, deprived him of his right to due process and equal protection, and violated his rights under state law.

As relief, Plaintiff seeks a declaratory judgment, an injunction to set aside his misconduct convictions, and compensatory and punitive damages.

II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

    III.    <u>42 U.S.C. § 1983</u>

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    **A. Procedural Due Process**

Plaintiff contends that he was deprived of procedural and substantive due process. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring

4

protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

1. Misconduct Convictions

Plaintiff alleges that various officials deprived him of due process in connection with his misconduct hearing and his appeal from the misconduct convictions. Prison misconduct proceedings only implicate a prisoner's liberty interests when the resulting sanction "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Under MDOC Policy Directive 03.03.105 ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105 ¶ AAAA). Therefore, Plaintiff could not have been denied good time or disciplinary credits as a result of his Class II or Class III misconduct convictions. In other words, his misconduct convictions do not inevitably affect the duration of his sentence.

Furthermore, Plaintiff does not allege that the sanction he received imposed an atypical and significant hardship. Indeed, he does not allege any consequences at all as a result of his convictions. Plaintiff, therefore, fails to state a procedural due process claim arising from his misconduct convictions because he has not alleged facts from which to infer that a protected property or liberty interest was at stake. Thus, the defendants responsible for holding the misconduct hearing or for reviewing the misconduct conviction on appeal did not deprive Plaintiff

5

of his right to due process.

### 2. Deprivation of Property

Plaintiff also alleges that Defendants "intentionally," "willfully," and "maliciously" withheld, damaged, or destroyed some of Plaintiff's property. (Compl., PageID.8, 10.) Plaintiff has a protected interest in his property, but his due process claim with respect to that property is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), overruled in part by *Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. He has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112 ¶ B. Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or

6

contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why these remedies would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff does not state a procedural due process claim.

### B. Substantive Due Process

Plaintiff also claims that he was deprived of substantive due process. "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))).

"Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

7

In this case, there are specific constitutional amendments that apply to Plaintiff's claims. Plaintiff contends that Defendant Abramson destroyed his property and issued misconduct tickets in retaliation for Plaintiff's grievances and complaints. Likewise, he contends that Defendant Bigger found him guilty of his misconduct convictions in retaliation for grievances and complaints. The First Amendment provides an explicit textual source of constitutional protection for these retaliation claims. Thus, the standard applicable to that source, the First Amendment right to be free from retaliation, and not the more generalized notion of substantive due process should be applied. *See Bell v. Johnson*, 308 F.3d 594, 610-11 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the source of substantive protection for a retaliation claim). Likewise, the Fourteenth Amendment's Procedural Due Process Clause would apply to protect any protected property or liberty interests at stake when Plaintiff was deprived of his property and found guilty of misconducts. Consequently, Plaintiff's substantive due process claim will be dismissed.

### C. Equal Protection

Plaintiff claims that Defendant Bigger denied him equal protection when failing to abide by prison policy in conducting the prison misconduct hearing. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005). In addition, prisoners do not have a fundamental right under the Constitution to particular procedures in a prison

misconduct proceeding.

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff's equal protection claim fails because he does not allege that he was intentionally treated differently from others who were similarly situated. The fact that Abramson did not abide by prison policy is not enough to show disparate treatment. Accordingly, Plaintiff's equal protection claim will be dismissed.

**D. Retaliation**

Plaintiff alleges that Defendants Abramson, Bigger, and Batho retaliated against him for filing grievances and complaints. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a

plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Court finds that Plaintiff states a retaliation claim against Defendants Abramson and Bigger, but does not state such a claim against Defendant Batho.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Plaintiff alleges no facts from which to reasonably infer that, to the extent Defendant Batho was responsible for the damage to Plaintiff's property, he acted in retaliation for Plaintiff's protected conduct. Plaintiff's retaliation claim against Batho is wholly conclusory. Accordingly, it will be dismissed as to Defendant Batho.

### E. State Law / Policy

Plaintiff claims that Defendants violated state law and MDOC policy. Claims under

§ 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

### F. Conspiracy

Plaintiff alleges that Defendants conspired with one another to retaliate against him. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete incidents that occurred over a period of time involving different individual officers. Plaintiff has provided no allegations establishing an agreement between the alleged co-conspirators. His

allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Parallel conduct may be consistent with an unlawful agreement, but it is insufficient to state a claim.

### G. Respondeat Superior

Plaintiff claims that Defendants Horton, Isard, LaLonde, and Batho are liable because they did not respond to his kites, complaints, or requests for an appeal from his misconduct convictions. Government officials may not be held liable under § 1983 for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Horton, Isard, LaLonde, and Batho engaged in any active unconstitutional behavior.[1] Accordingly, he fails to state a § 1983 claim against them.

---

[1] Plaintiff also contends that Isard, Batho, LaLonde, and Horton accepted a "policy or custom" of due process violations in prison disciplinary hearings (Compl., PageID.11), but this assertion is wholly unsupported. Moreover, it is irrelevant in Plaintiff's case because he has not alleged facts from which to infer that he had a constitutional right to due process in his prison misconduct proceedings.

12

### IV. 42 U.S.C. §§ 1985, 1986, 1987

#### A. 42 U.S.C. § 1985

To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must establish the following four elements: (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996). The plaintiff further must demonstrate that the conspiracy was motivated by a class based animus, such as race. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005); *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992).

Here, Plaintiff has not alleged or established that he is a member of a discrete and insular minority accorded special protection under the Equal Protection Clause because of inherent personal characteristics. *Seguin*, 968 F.2d at 590. He also has not alleged that Defendants' actions were motivated by his membership in any group. Accordingly, Plaintiff fails to state a civil conspiracy claim under § 1985.

#### B. 42 U.S.C. § 1986

42 U.S.C. § 1986 provides a cause of action against those that have knowledge of a § 1985 conspiracy and neglect to prevent it. Because the Court has determined that the complaint does not state a § 1985 conspiracy, Plaintiff also fails to state a claim under § 1986.

### C. 42 U.S.C. § 1997d

42 U.S.C. § 1997d[2] prohibits retaliation against persons who report conditions that may violate the Civil Rights of Institutionalized Persons Act. However, it does not create a private right of action for an individual. *Price v. Caruso*, No. 1:07-CV-117, 2007 WL 1521215, at *1 (W.D. Mich. May 22, 2007) (citing *Price v. Brittain*, 874 F.2d 252, 263 (5th Cir.1989), and *Gayle v. Lucas*, No. 97 Civ. 0883(MGC), 1998 WL 148416, at *5 (S.D.N.Y. Mar.30, 1998)); *accord Pope v. Bernard*, No. 10-1433, 2011 WL 478055, at *1 (1st Cir. Feb. 10, 2011); *Martin v. Upchurch*, No. 93-16907, 1995 WL 563744, at *3 n.3 (10th Cir. Sept. 22, 1995) ("[T]here is no private right of action under 42 U.S.C. § 1997.") (citing *Brittain*). Thus, Plaintiff cannot rely on § 1997d to bring a claim.

In short, Plaintiff fails to state a claim under 42 U.S.C. §§ 1985, 1986, and 1997d.

### V. State Law (Supplemental Jurisdiction)

Plaintiff also claims that Defendants violated state law, MDOC policy, and the Michigan Constitution. Plaintiff fails to state a claim under federal law against Defendants LaLonde, Isard, Horton, and Batho. To the extent he asserts a claim against them under state law, the Court must consider whether to exercise supplemental jurisdiction over such claims. When making this determination, the Court "should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). After considering these factors, the Court finds that they weigh against the exercise of supplemental jurisdiction. Accordingly, Plaintiff's state law claims against Defendants LaLonde, Isard, Horton, and Batho will be dismissed without prejudice.

---

[2] Actually, Plaintiff refers to "42 U.S.C. § 1997(d)" in his complaint, but there is no such section in 42 U.S.C. § 1997, so the Court interprets the complaint generously to assert a claim under 42 U.S.C. § 1997d.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the claims under 42 U.S.C. § 1983 alleging violations of due process and equal protection will be dismissed for failure to state a claim. In addition, all claims against Defendants LaLonde, Isard, Horton, and Batho under § 1983 will be dismissed for failure to state a claim. Furthermore, all claims under 42 U.S.C. §§ 1985, 1986, and 1987d will be dismissed for failure to state a claim. Accordingly, Defendants LaLonde, Isard, Horton, and Batho will be dismissed because Plaintiff fails to state a claim against them under federal law, and the Court declines to exercise supplemental jurisdiction over any claims against them under state law.

An order consistent with this opinion will be entered.

Dated: November 30, 2018 /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge