UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| DANIEL PERRY #135959, | Case No. 2:18-cv-00148 |
| Plaintiff, | Hon. Paul L. Maloney<br>U.S. District Judge |
| v. | |
| ANTHONY ABRAMSON, *et al.*, | |
| Defendants. | |

## REPORT AND RECOMMENDATION

### I.   Introduction

This is a civil rights action brought by state prisoner Daniel Perry pursuant to 42 U.S.C. § 1983.  Perry asserts that Correctional Officer Anthony Abramson and Lieutenant Crystal Bigger retaliated against him, in violation of the First Amendment.[1]

Defendants C.O. Abramson and Lt. Bigger have filed a motion for partial summary judgment regarding Perry's retaliation claim against Lt. Bigger; Perry has responded; and C.O. Abramson and Lt. Bigger have filed a reply.  (ECF Nos. 22, 29, and 31.)  Defendants assert that Perry has not exhausted his administrative remedies with regard to his claim against Lt. Bigger.  The undersigned has reviewed the pleadings and associated documents, and respectfully recommends that the Court (1)

---

[1]   Perry initially alleged a few different constitutional violations against several defendants.  (ECF No. 1, PageID.11.)  The Court dismissed all but the two retaliation claims against C.O. Abramson and Lt. Bigger.  (ECF No. 6.)

1

grant C.O. Abramson and Lt. Bigger's motion for partial summary judgment, and (2) dismiss the retaliation claim against Lt. Bigger without prejudice.

**II.     Summary of Perry's Allegations**

In February 2018, Perry was transferred to the Chippewa Correctional Facility (URF). Perry says that, on February 25, 2018, C.O. Abramson broke the seal on Perry's duffle bag and searched the property within the bag outside of Perry's presence. (ECF No. 1, PageID.7.) C.O. Abramson telephoned Perry to inform him of this. (*Id.*) Perry responded that Abramson's actions violated prison policy, and Perry indicated that he would file a grievance. Perry says that Abramson then told him that if he filed any grievances or complaints about the matter, Abramson would go back through Perry's property, alter Perry's appliances, and write as many misconducts as he could to ensure that Perry would be placed on "TOP-LOCK" restriction. (ECF No. 1, PageID.7-8.)

On March 1, 2018, C.O. Abramson issued two Class II and one Class III misconduct tickets against Perry for possessing items in violation of prison policy. (ECF No. 1-10, 1-11, and 1-12.) Perry alleges that C.O. Abramson damaged or altered Perry's property to make it appear that the property was stolen, damaged, or improperly altered. C.O. Abramson then allegedly issued Perry the misconduct tickets for possessing damaged property.

On March 6, 2018, during Perry's Class II misconduct hearings, Lt. Bigger allegedly refused to allow Perry to speak, contrary to prison policy, and told Perry that she did not care about his evidence or statements because she always trusted

the word of a prison official over that of a prisoner, especially prisoners like Perry who "like to file grievances and complaints against her co-workers." (ECF No. 1, PageID.9.) She also allegedly told Perry that he was guilty because he filed grievances against her co-workers. (*Id.*) She told Perry "to stop filing grievances and complaints and maybe next time, this will not happen[.]" (*Id.*) According to Perry, she warned him not to file any grievances or complaints against her or she would "make his life at URF a living hell . . . it wouldn't take much to give an order to have [his] house shook down, his property damaged, dest[royed], misplaced, lost or even a weapon planted in his area of control[.]" (*Id.*, PageID.8)

Perry alleges that Lt. Bigger "arbitrarily found [him] guilty of separate misconducts allegedly arising out of a single incident." (*Id.*, PageID.9-10.) Further, Perry says Lt. Bigger refused to disqualify herself or prevented Perry from presenting evidence. (*Id.*) Perry then states that he requested appeals in a correct and timely manner for his Class II and III guilty findings. (ECF No. 1, PageID.10.) Those requests allegedly went unanswered. (*Id.*)

### III. Summary of Defendants' Position

Defendants argue that the sole issue for summary judgment is "whether Plaintiff Daniel Perry complied with the PLRA's requirement that he properly exhausted all available remedies with respect to his claims against Defendant Bigger." (ECF No. 31, PageID.215.) Defendants assert that Perry could not properly exhaust all administrative remedies regarding Lt. Bigger because: (1) Perry never raised the issue of retaliation during his misconduct hearings; (2) Perry never

3

appealed his Class II misconduct hearings to raise the retaliation issues; and (3) the grievance in which Perry does raise retaliation is not a proper vehicle for prisoners to raise the retaliation issue. (ECF No. 22, PageID.97-99.) Defendants note that the grievance was rejected at Step I through Step III pursuant to MDOC P.D. 03.02.130 ¶ F(4). (*Id.*, PageID.99.)

Defendants also address an issue not raised by Perry. (*Id.*) Defendants preemptively argue that Perry cannot salvage his claim against Lt. Bigger by arguing that he exhausted an unidentified property claim. (*Id.*) According to Defendants, the unidentified property claim was settled after Perry filed this suit. (*Id.*)

### IV. Summary of Perry's Response

In response, Perry argues that the Court previously held that he had satisfied the exhaustion of administrative remedies requirement. (ECF No. 29-1, PageID.197-198.)² Citing *Ross v. Blake*, Perry then asserts that there is no administrative remedy requirement in this case because Abramson and Lt. Bigger used intimidation to thwart Perry's access to the grievance process. (*Id.*, PageID.198-199.)

Also, Perry attaches to his response three letters that request information about the appeals he allegedly filed and a declaration from a fellow inmate. One letter is dated April 5, 2018, and is addressed to the warden. (ECF No. 29-2, PageID.208.) The letter states that Perry filed the appeals regarding his two Class II misconducts on April 5. (*Id.*) It also says that those misconducts, as well as the Class III misconduct, are duplicative and arise out of a single incident. (*Id.*)

---

²     The record does not reflect such a holding.

The other two letters bear the same date, May 6, 2018, and are addressed to Warden Connie Horton. (*Id.*, PageID.206-207, 209.) The first May 6 letter requests information about the decision regarding the appeal Perry allegedly sent. (ECF No. 29-2, PageID.206-207.) The letter also memorializes two alleged communications. (*Id.*, PageID.206.) The first alleged communication memorialized was to Perry from Warden Connie Horton. This communication states that Warden Horton sent an email on April 5, 2018 to "Kim" and "Bob." (*Id.*) The other alleged communication memorialized was from Assistant Resident Unit Supervisor Thompson to inform Perry that Perry would meet Warden Horton on April 26, 2018 about removing the misconducts from his file and having the property returned to him. (*Id.*) At the end of the letter, it requests information about Perry's appeals. (*Id.*) The second May 6 letter to Warden Horton reiterates what is stated in the first May 6 letter. (ECF No. 29-2, PageID.209.)

Perry also attaches a declaration from inmate Bruce Parker. (*Id.*, PageID.210-211.) Parker states that he was present for Perry's Class II misconduct hearings. (*Id.*) Parker says he was present because he had a Class II misconduct hearing immediately prior to Perry's and that Parker's charge was also due to an officer's retaliation. (*Id.*, PageID.210.) Parker says that, while he was present, he heard Lt. Bigger state that she would not believe an inmate over an officer and that she did not care what Perry's evidence showed. (*Id.*)

## V.     Summary of Relevant Misconducts and Misconduct Hearings

### A. *Possession of Stolen Property: Theft (Possession of Another Inmate's Padlock)*

On March 1, 2018, C.O. Abramson issued Perry a Class II misconduct ticket for possession of stolen property: theft. (ECF No. 22-3, PageID.119.) While searching through Perry's duffle bag on February 25, 2018, C.O. Abramson found a padlock that was inscribed with an inmate number different from Perry's.[3] (*Id.*) On March 2, 2018, the misconduct report was reviewed by Sgt. M. Jones. (*Id.*) That same day, Perry signed the misconduct report to acknowledge that he had received a copy of the misconduct report. (*Id.*) Perry did not sign the box that indicates that he waived a hearing for this Class II misconduct. (*Id.*) On March 6, 2018, Investigator Durant signed the misconduct report where it would indicate that he was the employee that would accept a plea and impose sanction. (*Id.*)

Also on March 6, 2018, Lt. Bigger presided over Perry's misconduct hearing for this Class II misconduct. (ECF No. 22-3, PageID.118.) The misconduct hearing report indicates that Perry pled not guilty and does not indicate that Perry waived his right to the hearing. (*Id.*) Indeed, Perry was present at the hearing and he stated, "he was never locking at MCF." (*Id.*) In addition, the misconduct hearing report does not show that Perry raised the issue of retaliation by C.O. Abramson or by Lt. Bigger. (*Id.*)

---

[3]     Defendants' attach a photo of the padlock found on February 25, 2018 in Perry's duffle bag by C.O. Abramson. (ECF No. 22-3, PageID.120.)

During the hearing, C.O. Abramson was found to be credible and Perry was found guilty. (*Id.*) Perry was sanctioned to receive three days in "Toplock" (confinement to his cell). (*Id.*) Investigator Durant also signed the misconduct hearing report, but this time, he was designated as the hearing investigator. (*Id.*)

There is nothing in the record to support a finding that Perry filed for an appeal of this Class II misconduct decision. In an affidavit from Investigator Durant, he swears that the prison has no record of Perry requesting an appeal of any misconduct hearing that was decided on March 6, 2018. (ECF No. 22-5, PageID.139-140.)

### B. *Destruction or Misuse of Property (Possession of a Modified AM/FM Superior Radio)*

On March 1, 2018, C.O. Abramson issued Perry a Class II misconduct ticket for destruction or misuse of property. (ECF No. 22-3, PageID.122.) While searching through Perry's duffle bag on February 25, 2018, C.O. Abramson found an AM/FM Superior Radio that had been modified to render it no longer compliant with prison policies.[4] (*Id.*) Perry received the destruction or misuse of property charge because he possessed the modified radio. (*Id.*)

On March 2, 2018, Sgt. M. Jones reviewed and signed the misconduct report. (*Id.*) On March 3, 2018, Perry signed the misconduct report to acknowledge that he had received a copy. (*Id.*) In the misconduct report's box to indicate whether Perry

---

[4]   Defendants attached photographs of the modified radio. (ECF No. 22-3, 123-125.)

waived his right to a misconduct hearing, the date, "3/16/18", is written.[5] (*Id.*) On March 6, 2018, Investigator Durant also signed the misconduct report as the employee designated to accept a plea and impose a sanction. (*Id.*)

On March 6, 2018, Lt. Bigger presided over this Class II misconduct hearing. (ECF No. 22-3, PageID.121.) Again, Investigator Durant signed the misconduct hearing report as the hearing investigator. (*Id.*) Perry was present at the hearing and pled not guilty. (*Id.*) During the hearing, Perry stated that he "had the radio for over 30 years." (*Id.*)

During the hearing, it was determined that the radio was "clearly altered" and that C.O. Abramson was credible. (*Id.*) Perry was found guilty and sanctioned with five days loss of privileges. (*Id.*) According to the hearing report, Perry never raised the issue of retaliation from C.O. Abramson or Lt. Bigger. (*Id.*)

There is nothing in the record to indicate that Perry filed an appeal of this Class II misconduct decision. In an affidavit, Investigator Durant swears that the prison has no record of Perry requesting an appeal of any misconduct hearing that was decided on March 6, 2018. (ECF No. 22-5, PageID.139-140.)

### C. *Contraband (Possession of Two Hairbrushes with Handles)*

On March 1, 2018, C.O. Abramson issued Perry a Class III misconduct ticket for possession of contraband. (ECF No. 1-12.) Again, while searching through Perry's

---

[5] The "3/16/18" date appears to have no particular significance as it relates to nothing else in the record. Also, this date does not provide the Court with a sufficient basis to determine that Perry waived his right to a misconduct hearing. (ECF No. 22-3, PageID.122.)

8

duffle bag on February 25, 2018, C.O. Abramson found two hairbrushes with handles. (*Id.*) The two hairbrushes with handles are considered contraband because they violate MDOC policy. (*Id.*)

On March 14, 2018, Perry waived his right to a hearing regarding the Class III misconduct hearing. (*Id.*) Perry was found guilty. (*Id.*) The only sanction imposed was the costs associated with sending the hairbrushes out of the prison. (*Id.*)

There is no record of Perry filing for an appeal regarding this Class III misconduct decision.

### VI. Summary of Relevant Grievances

#### A. *Grievance URF-18-03-662-19c*

On February 26, 2018, Perry filed grievance URF-18-03-662-19C. (ECF No. 22-2, PageID.110.) In the grievance, Perry complains about C.O. Abramson's conduct on February 25, 2018. (*Id.*) Specifically, Perry complains about C.O. Abramson breaking the seal on Perry's duffle bag and searching through Perry's personal property without Perry being present. (*Id.*)

After Perry was interviewed, on March 17, 2018, Perry's grievance was denied at Step I because Sgt. M. Jones found that C.O. Abramson's conduct did not break MDOC policy. (*Id.*, PageID.111.) Captain J. Burke reviewed and signed the Step I response. (*Id.*)

On April 4, 2018, Perry appealed the Step I response to Step II and claims that there was a violation of his Fourteenth Amendment rights. (ECF No. 22-2,

PageID.108.)  At Step II, Warden Horton denied the appeal because "[n]o violation of policy exists" regarding the set of facts that Perry argues.  (*Id.*, PageID.109.)

On May 4, 2018, Perry's appeal to Step III was received.  (*Id.*)  At Step III, the appeal was denied pursuant to MDOC P.D. 03.02.130.  (*Id.*, PageID.107.)

### B. *Grievance URF-18-03-731-27A*

On March 8, 2018, Perry filed grievance URF-18-03-731-27A. (ECF No. 22-2, PageID.115.)  In this grievance, Perry complains about two issues: (1) that Lt. Bigger does not have the authority to preside over misconduct hearings, and (2) that "the Director MDOC has abused and misused" his authority.  (*Id.*)  At Step I, the grievance was rejected because decisions made in Class II and III misconduct hearings are nongrievable issues.  (*Id.*, PageID.116.)

On April 18, 2018, Perry appealed the grievance to Step II.  (*Id.*, PageID.113.) On March 21, 2018, the rejection was upheld pursuant to MDOC P.D. 03.02.130.  (*Id.*, PageID.114.)

On April 10, 2018, Perry's appeal to Step III was received.  (*Id.*, PageID.112.) The rejection was again upheld .  (*Id.*)

### VII. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## VIII. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

11

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief that he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). In rare circumstances, an administrative remedy will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally

before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at \*12.

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019. Where grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at \*3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[6], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011). If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

---

[6] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

14

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325.    We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[7]

## IX.   Analysis

On March 1, 2018, Perry was issued three different misconduct tickets regarding various items found in Perry's duffle bag when he was transferred to URF. (ECF No. 22-3, PageIDs.119, 122; ECF No. 1-12, PageID.31.)  As noted above, Lt. Bigger presided over Perry's Class II misconduct hearings, reviewed the misconduct reports, heard from Perry, and found Perry guilty.  (ECF No. 22-3, PageIDs.118, 121.) As discussed above, Perry waived his right to a hearing for his Class III misconduct. (ECF No. 1-12, PageID.31.)

---

[7]     In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

Inmates must first raise the retaliation issue during a misconduct hearing. *Siggers v. Campbell*, 652 F.3d at 693-94. The records before the Court indicate that Perry did not raise the retaliation issue during his misconduct hearings. (ECF No. 23-3, PageIDs.119, 122; ECF No. 1-12, PageID.31.)

In addition, because Perry alleges that he received retaliatory Class II and III misconducts, he was required to file appeals based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Heyns*, 2014 U.S. Dist. LEXIS at *13-17. Again, the records indicate that he did not do so. (ECF No. 22-3, PageID.118, 121; ECF No. 1-12, PageID.31.)

The letters attached to Perry's response suggest that Perry did seek to file an appeal regarding his misconduct hearings. (ECF No. 29-2, PageID.206-209.) Investigator Durant swears that neither he nor the Warden's Office received those letters or indication that Perry sought to appeal any of his Class II misconduct hearings. (ECF No. 22-5, PageID.139-140.) But, even assuming the letters are genuine, the letters show that Perry's alleged appeals would have been untimely and in violation of prison procedures. Prison procedures give prisoner's 15-days to file an appeal. MDOC PD 03.03.105 ¶¶ UUU-XXX. The Class II misconduct hearings were held on March 6, 2018 and the Class III misconduct decision was issued on March 14, 2018. (ECF No. 22-3, PageIDs.118, 121; ECF No. 1-12, PageID.31.) Perry alleges in his letters that he filed an appeal on April 5, 2018. The April 5, 2018 date is beyond the 15-day appeal period for both the Class II and III misconducts.

For the foregoing reasons, the undersigned concludes that Perry failed to properly exhaust the retaliation claim against Lt. Bigger within the misconduct hearing and appeal process because Perry failed to raise this issue during his misconduct hearings and failed to appeal those hearings.

Perry also failed to exhaust his administrative remedies in the two grievances discussed above. First, in grievance **URF-18-03-0662-19c**, Perry complains only about C.O. Abramson's conduct. (ECF No. 22-2. PageID.110.) The grievance does not reference any retaliation issues. (*Id.*) Thus, this grievance did not exhaust Perry's remedies against Lt. Bigger.

Second, in grievance **URF-18-03-0731-27A**, Perry alleges that Lt. Bigger was not authorized to preside over Perry's misconduct hearings. (ECF No. 22-2, PageID.115.) Pursuant to MDOC Policy Directive, decisions made during misconduct hearings are considered nongrieveable and must be heard through the rehearing process. MDOC PD 03.02.148 ¶ F(2). As a result, Perry's second grievance was rejected through Step III because it violated the MDOC policy. Grievances that are rejected for failure to satisfy the policy fail to demonstrate proper exhaustion. *Scott v. Amani*, 577 F.3d 642, 647 (6th Cir. 2009). In the opinion of the undersigned, Perry failed to exhaust his retaliation claim against Lt. Bigger.

## X.     Recommendation

The undersigned respectfully recommends that the Court (1) grant the motion for partial summary judgment (ECF No. 21) because Perry failed to exhaust his administrative remedies with respect to his retaliation claim against Lt. Bigger, and

(2) dismiss Lt. Bigger from the case without prejudice. If the Court accepts this recommendation, the retaliation claim against C.O. Abramson will remain.

Dated:   December 18, 2019             /s/ *Maarten Vermaat*
                                        MAARTEN VERMAAT
                                        U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).